UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                )
v.                              )       No. S1 4:20 CR 178 HEA
                                )
CLARENCE LEE TOTTEN,            )
                                )
        Defendant.              )

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant CLARENCE LEE TOTTEN, represented by defense counsel TERENCE NIEHOFF, and the United States of America (hereinafter "government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to the lesser included offense in Count II and Count XVII of the charge, the government agrees to move for dismissal as to Counts III, IV, V, and XVI at the time of sentencing. The government also agrees that no further federal prosecution will be brought

1

in this District relative to the defendant's participation in the charged conspiracy to distribute controlled substances (including the period between September 2019 through May 2020), or his possession of any firearm in furtherance thereof, or as to his possession of any controlled substance or firearm on April 19, 2019, of which the government is aware at this time. In addition, the government agrees to not seek statutory enhancement of defendant's sentence by filing an information pursuant to Title 21, United States Code, Section 851(a).

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that the United States will request a sentence within the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court. The defendant may request any sentence pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). Defendant further agree that notice of any request for a sentence below the guideline range will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to the lesser included offense in Count II, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to any and all items listed in the Forfeiture Allegation contained in the Superseding Indictment.

**3. ELEMENTS:**

2

As to the lesser included offense in Count II, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1.   That beginning on an unknown date but including September 2019 and continuing thereafter, within the Eastern District of Missouri and elsewhere, two or more persons came to an agreement or reached an understanding to distribute a controlled substance, and;

2.   That the defendant knowingly and intentionally joined in the agreement or understanding, either at the time it was first reached or at sometime thereafter while it was still in effect, and;

3.   That at the time he joined in the agreement or understanding, defendant knew its illegal purpose, and;

4.   The amount of fentanyl involved in the offense and attributable to defendant by virtue of his own conduct and the conduct of co-conspirators reasonably foreseeable to him was in excess of 40 grams.

As to Count XVII, the defendant admits to knowingly violating Title 18, United States Code, Section 922(g), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1.   That on or about May 29, 2020, within the Eastern District of Missouri, the defendant possessed a firearm as that term is defined by federal law, and;

2.   That he did so knowingly and intentionally, and;

3

3.      That he did so having been previously convicted by a court of a crime the penalty
        for which exceeded one year (a felony offense); and

4.      That he did so knowing that he had been previously convicted of said felony
        offense, and;

5.      That the firearm was not manufactured in the State of Missouri and therefore
        traveled in and affecting commerce prior to its seizure from defendant's possession.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would
prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be
considered as relevant conduct pursuant to Section 1B1.3:

Beginning in September 2019, investigators with the Drug Enforcement Administration
and St. Louis County Police Department began investigating drug trafficking activities allegedly
being undertaken by co-defendant Jamore Clark and others in the St. Louis metropolitan area.

The remained ongoing until May 2020, when agents received judicial authorization to
monitor multiple telephones utilized by co-defendant Jamore Clark ("Clark"). During that judicially
authorized wiretap, investigators intercepted conversations between co-defendant Clark and
customers, as well as co-conspirators, discussing money and narcotics.

On May 6, 2020, agents established surveillance on the residence of co-defendant Clark
based upon intercepted communications suggesting that he was planning to meet with Totten. During
one such conversation, Totten requested to pick up an unknown quantity of drugs from Clark.
Following that conversation, surveillance agents observed Clark travel to and enter a residence at

4

4518 Stivers in St. Louis. Agents had previously identified that address as a "stash house" for narcotics and/or firearms.

　　　　While Clark was inside the Stivers residence, Totten, called Clark and warned him, "there too many people . . . police, they ain't . . . they 'county.'" Shortly thereafter, Clark left the Stivers residence and traveled to the parking lot of a barbecue restaurant on Jennings Station Road. He met for a short time with an unknown male driving a black Infiniti passenger sedan. The unknown male got into Clark's vehicle and the two departed the parking lot. They drove to the Stratford Commons Apartments, where they met with Totten. After a short meeting, during which Totten leaned into Clark's vehicle, Clark and Totten left – in separate vehicles but traveling together – and took eastbound Interstate 70 toward St. Louis. Agents attempted to conduct a traffic stop on Totten's vehicle but traffic conditions impeded their efforts. Agents also maintained surveillance on Clark, who placed an outgoing telephone call to a female subject in which he instructed her to "go to the crib [house] and get that thing out of the basement."

　　　　Clark began to drive erratically, alternating between eastbound and westbound Interstate 70. During a phone call from an unknown male, Clark repeatedly stated "oh, my God," and later asked the caller to "pick [him] up in the backyard at granny house." At one point, agents lost sight of Clark's vehicle for a brief period. When they located it, the vehicle was unoccupied. Thereafter, agents intercepted a call to a woman named Danielle in which Clark stated, "there go the police, right there." He also told her, "they all over through this mother***er." Danielle, who was en route to Clark's location, identified (correctly) multiple vehicles as unmarked police vehicles. As Clark continued to direct Danielle to his location, agents observed Clark emerge from between two houses

5

and approach Danielle's black Mercedes passenger vehicle. Clark was arrested and Danielle was detained.

Agents asked Clark for the keys to the Ford passenger vehicle he had been driving all day and that he had abandoned nearby. Clark denied possessing the keys and denied ownership of the vehicle. When advised that he had been surveilled throughout the day and observed driving it, Clark again denied having been in possession of the Ford. He also indicated that he did not reside at the Stivers address, claiming that he had "nothing to do" with that residence.

Through the window of Clark's Ford, agents observed the black shaving-style bag he had carried out of the Stivers address before meeting with Totten. They gained access to the Ford and retrieved the bag. They discovered that it contained a large quantity of suspected fentanyl. The substance was later confirmed by laboratory tests to consist of approximately 758 grams of fentanyl. Pursuant to a grant of consent, agents also searched the Stivers address, at which they located an AR-15 style rifle with a drum magazine. On the same date, agents obtained and executed a search warrant at Clark's residence, from which they seized jewelry, ammunition, 7 cellular telephones, and $31,451 in cash.

On May 18, 2020, agents utilized a confidential informant to make a controlled purchase of fentanyl from Totten. The informant was accompanied by a DEA Task Force Officer acting in an undercover capacity. Other agents established surveillance at Totten's residence on Laclede Forest in Maplewood, Missouri. During recorded telephone calls, Totten directed the informant to come to his residence. The informant did as he was instructed and both the informant and the Task Force Officer responded to Totten's apartment complex. The Task Force Officer observed Totten step out the front door and look up and down the street. The informant approached and contacted Totten at

6

the front door as the Task Force Officer watched from the car. Totten handed the informant a bag containing twenty-four capsules. Totten advised that the gray colored capsules contained carfentanil.

On May 29, 2019, investigators executed a federal search warrant at Totten's Laclede Forest residence in Maplewood. Totten and his pregnant girlfriend were present in the residence at the time of the execution of the warrant. Totten, who was on parole, was arrested. He was advised of his *Miranda* rights, which he waived. Thereafter, Totten advised that there were firearms in the residence that belonged to him, including an "AR pistol" on the floor of the bedroom and handguns in the top dresser drawer. Totten also advised that there was approximately one-half ounce of fentanyl I the living room and Percocet pills and money in his bag. During the search, they located 2 pill presses, $4,888 in cash, 36 Percocet pills, three digital scales, a blender containing residue, multiple empty gelatin capsules, and a box of .40 caliber ammunition. In the bedroom, they discovered a loaded Glock model 22 pistol, serial number WMG265, and a loaded Glock model 20 pistol, serial number BBBY926. They also located a loaded Smith and Wesson model M&P 15, M-4 style pistol, serial number SZ10982 (which contained a 50 round drum magazine) and a Smith and Wesson model M&P 15 M-4 rifle, serial number ST37085. None of the firearms were manufactured in the State of Missouri and, as a result, they necessarily traveled in interstate commerce prior to their seizure.

During a post-*Miranda* interview, Totten advised that he obtained fentanyl from Clark in December 2019 and March 2020. He admitted to meeting with Clark on March 6, 2020 and stated that during the meeting, he had paid Clark $1,500 toward an outstanding $2,600 debt he owed for previously acquired fentanyl. Based upon controlled purchases and intelligence gathered during the course of the investigation, $2,600 was the approximate cost of 2 ounces (56 grams) of fentanyl.

7

Totten indicated that the fentanyl seized from his residence on March 29, 2020 had been purchased from a different source (as Clark had been incarcerated since March 6), and that he had purchased a total of approximately 50 grams of fentanyl from that source since Clark's arrest.

The amount of fentanyl for which Totten is accountable is difficult to calculate with precision. However, based upon information obtained by way of judicially authorized wiretaps, physical and electronic surveillance, controlled purchases, search warrants and seizures, and defendant's own statements, the parties are in agreement that based upon his own conduct and the conduct of co-conspirators reasonably foreseeable to him, Totten is accountable for more than 400 grams but less than 1.2 kilograms of fentanyl.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in the lesser included offense in Count II is imprisonment of not more than forty years, a fine of not more than $5,000,000.00, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than four years. The defendant also fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least 5 years.

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in Count XVIII is imprisonment of not more than ten years, a fine of not more than $250,000.00, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years.

8

In the event defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

In certain situations, under Title 18, United States Code, Section 924(e) (Armed Career Criminal), defendant may be subject to a mandatory minimum sentence of fifteen (15) years and a maximum sentence greater than described above. The defendant is pleading guilty with full knowledge of these possibilities, has discussed these possibilities with counsel and will not be able to withdraw the guilty plea if the Court determines the foregoing statute applies to defendant's sentence. However, both parties retain the right to litigate whether Section 924(e) applies to defendant's sentence.

## 6. U.S. SENTENCING GUIDELINES: 2021 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### a. Chapter 2 Offense Conduct:

(1) Base Offense Level: As to the lesser included offense in Count II, the parties agree that the base offense level is 30, as found in Section 2D1.1(c)(5). The parties agree that the quantity of fentanyl for which the defendant is accountable, including relevant conduct, is at least 400 grams, but less than 1.2 kilograms, resulting in the agreed Base Offense Level.

9

As to Count XVIII, the parties agree that the base offense level is determined pursuant to Section 2K2.1 and is dependent upon the nature of the firearm(s) and defendant's prior criminal history.

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

As to Count II, the parties agree that 2 levels should be added pursuant to Section 2D1.1(b)(1) because defendant possessed a dangerous weapon (firearm) in connection with the offense.

As to Count XVIII, the parties agree that 2 levels should be added pursuant to Section 2D1.1(b)(1)(A), because the defendant possessed at least 3 but no more than 7 firearms.

**b. Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) **Other Adjustments:** The parties agree that the following additional adjustments apply: None.

c. **Other Adjustment(s)/Disputed Adjustments:** None.

d. **Estimated Total Offense Level:** As to Count II, the parties estimate that the Total Offense Level is 29, unless the defendant is a Career Offender. Depending on the underlying offense and the defendant's criminal history, the defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds the defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. The defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender.

As to Count XVIII, the parties agree that the Total Offense Level is determined pursuant to Section 2K2.1 and is dependent upon the nature of the firearms and defendant's criminal history. However, depending on the underlying offense and the defendant's criminal history, the defendant could be a Career Offender pursuant to Section 4B1.1 or an Armed Career Criminal pursuant to Title 18, United States Code, Section 924(e) and Section 4B1.4. If the Court finds the defendant is a Career Offender or an Armed Career Criminal or both, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. The defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender or an Armed Career Criminal.

e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

11

**f.  Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a.  Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1)  Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2)  Sentencing Issues:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

12

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the

13

term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

14

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of any and all items listed in the Forfeiture Allegation in the Superseding Indictment. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

15

of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

**10.  VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

16

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the government, at its option, may be released from its obligations under this agreement. The government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12.  NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

_3/7/2023_
Date

_3-7-23_
Date

_3/7/22_
Date

TIFFANY G. BECKER
Assistant United States Attorney

CLARENCE LEE TOTTEN
Defendant

TERENCE NIEHOFF
Attorney for Defendant

18